Okay, I'd like for the attorneys to step up to the podium. I'd like for you to tell me your names, who you represent, and approximately how long your argument will take. Good morning, counsel. Good morning, guys. I'm Peter Morris. I represent the vandit firms. How long will your argument take, counsel? So, I would say 15, then 10, 15 for initial attempt rebuttal. I'll try to go quicker than that, but I would like the maximum time allowed. Very good, Mr. Morris. Good morning, counsel. Good morning, members. Dan Worker on behalf of Maryland Casualty. I anticipate that our argument will take no longer than 15 minutes. Okay, very good. Mr. Morris, why don't you proceed with your argument? Thank you, Your Honor. As you are very well aware, this case involves the catastrophic injury that Mr. Vandenberg suffered when he fell from a bench that tipped over, which rendered him a quadriplegic. He filed an original complaint against the Maryland insured defendants, which specifically alleged that he was on a bench, the bench tipped over, and that the defendants were negligent for the use of this bench. Maryland denied any duty to defend or identify their insureds, claiming that their watercraft exclusion completely barred any theory of recovery against their insured. The plaintiffs then attached to a motion to leave the filing of an amended complaint, the amended complaint, which made it crystal clear, if the first one didn't, that this case also involved a theory against the defendants that they were negligent for the use of an unstable, portable bench. Did the plaintiffs oppose the amended complaint in the deck action or in the underlying personal injury action? It was in the underlying action, and there were, there was a state court action, but then part of the case got moved to the federal court, and so the federal court stayed part of the state court action, so the court didn't allow them to actually, officially file the amended complaint because of the state. I just want to get the procedure correct. Is there a 2010 personal injury suit that was filed that was state, and this is the 2011 personal injury suit, correct? I'm sorry, I'm not sure if it was re-filed into number. All right. And then discovery took place in the underlying case, and discovery reconfirmed that this case actually definitely involved a unstable portable bench that tipped over. In fact, there were even dueling experts as to how unstable the bench was. There was no question that was a significant portion of the case, yet Maryland refused to defend the case. The, I'm not claiming, as Maryland may claim, that the fact of exactly where it was located aggregated the injuries. It just certainly did. If this had been someplace else on the boat, I would have, you know, broken a wrist, dislocated a shoulder, something else. But the fact of the matter is the boat had nothing to do with the initiating cause of this accident, which was this bench that tipped over and caused him to fall. Mr. Morris? Yes? You had an expert, an engineer, correct, Mr. Seaford? In the underlying case, you're right. Okay. So what did he say regarding the cause of the injury? Well, he was not an injury expert. He was an engineer. Okay. And he tested this bench, and every time he made the move that the witnesses said happened, apparently Mr. Vandenberg is on this bench, and maybe somebody calls his name, he turns around. He's a big guy. He's bigger than me. He's six-something, big chest. And his force of turning around, and maybe his sunglasses fell off, that caused the bench to tip over. And the expert reacted that many, many times, and it always tipped over. Did he indicate in his testimony any concern about the placement of the bench on the yacht? Certainly putting an unstable bench near a ledge is not a good idea. Did he indicate any concern about the lack of railing on the yacht in his testimony? There's no question that was another significant aspect of the defendant's liability. So he has testified in his report that there was some concern about the way the yacht, the layout, the railing, or absence of it. Yeah, absolutely, you're right. There's actually two parts of this claim. The bench tipping over in the first place, which would cause some injury, and the bench tipping over and going over the ledge, which caused the catastrophic injuries. But there would have been injuries, some injury, if a bench tipped over anyway. This bench could have been on the land like it frequently was, and it could have fallen. And what if there was a rock down there? It could have hit your head on a rock. What if it was on the edge of the water? You could have fallen. You could have drowned if the bench tipped over and fell into the lake, and you weren't able to swim. There's lots of ways that it... Well, if it was on the land and he fell over and hurt himself, presumably a lawsuit would be filed against Doe and Doe's owners and everybody else. And Maryland would come in, correct? Yeah, I don't think they'd raise the watercraft institution there unless they said, well, sometimes the bench is also used on a boat. So they wouldn't have raised the watercraft because it wasn't on water. Correct. It wasn't on a boat. Correct. So they raised it because it was on a boat, and it happened on a boat. That's exactly why they raised it, because of the location where the bench tipped over. But that doesn't control what this exclusion applies. If you look at the cases that we cite, it really comes down to the fact that here, nothing in the boat or a movement of this boat in any way caused this injury. This boat had been anchored for four hours, tied in a bow. All those are factual circumstances that may or may not have been resolved by a trial, but were not included in the only complaint that was on file in the case, correct? Correct. Your complaint does not allege any of these circumstances. You claim that these circumstances of alleged negligent causation are alleged in a proposed amended complaint, correct? Yes, Your Honor. So they're in the proposed amended complaint, but they're not in the complaint before Judge Pantin. The original. That was the declaratory complaint. Right, the declaratory based upon the complaint on file. The original complaint, we cite those paragraphs of the original complaint, which mention the fact that he fell off a tippy bench. The bench went over and he fell. And then it's just emphasized by the proposed amended complaint. Can you direct this to the specific paragraph in the complaint you're referencing? Because all the allegations I see in A, failed to provide railing or equivalent protection. B, failed to present Scott, other passengers, and the band from assessing the rear of the top deck. C, allowed passengers, including Plaintiff Scott, to assess areas of the top deck. D, failed to warn passengers, including Plaintiff Scott, of the lack of railings. E, allowed a bench to be placed inches from the rear of the unrailed top deck. Which paragraph were you making reference to? I guess the last paragraph does mention the bench. And earlier portions of the complaint do allege that he fell off this bench. And it also mentions that he fell off the bench while he was on the top of the boat. Absolutely, and we're not trying to ignore that fact. That's the problem that personally I have with what we're confronted with, is that that's what the underlying complaint alleges. The crux of your argument is also enter into the consideration of proposed, unfiled, amended complaint that alleges basically a separate, second cause of action for negligence related to the bench itself. That was never filed in the circuit court, correct? Other than as an attachment to a motion for leave to file. It was never granted leave to file. Okay, so that's the elephant in the room. Why wasn't it filed? Because of the stay. Well, the stay didn't preclude you from... It did. From what? They can notice up the motion and attach the proposed amended complaint to the motion for leave to file, but the stay prevented the state trial court judge from allowing it to be filed. I wasn't there. That was an issue rule. Well, did it stay the settlement proceedings? Absolutely did not stay the settlement proceedings. In fact, it was originally going to be the federal judges had set up a settlement conference and then realized when she saw the presentations that the insurance companies were so unwilling to pay anything, she canceled it, so it was a separate, private mediation. The settlement occurred under the auspices of what jurisdiction? The federal courts or the state courts? It ended up just being a separate settlement conference with a retired judge with all the parties participating. There was an underlying state court election going. There was a part of the cases... The federal court was dismissed? The case was dismissed, I take? Eventually, but not at that time it wasn't dismissed. Well, at some point it was dismissed. After the settlement. The federal court was still going on. The federal court case was still going on. There was going to be a settlement conference with the judges there, and then she canceled it. Okay. Mr. Morris, am I correct or not correct in saying don't you abandon all of these related negligence claims once you settle it? Absolutely not, Your Honor. So the parties, when they settle, there is still the possibility it could be a defective bench, it could be some other condition on the yacht, it could be something unrelated to the yacht. These are still claims that could be brought, then, even after the settlement? No, once the case is settled, the case is settled. Right. Well, then I guess what I'm trying to find out is why would the parties consider, why would Judge Pantle have to consider the proposed amended complaint? For a number of reasons. First, the first complaint mentions the bench. The proposed amended complaint clearly sets forth a separate cause of action. It was only not filed because of the stay. And thirdly, as we cite extensively in our briefs, the law is crystal clear that insurance companies can't just put blinders on, okay, I'm going to look at that first complaint. I'm not going to look at anything else. I'm just going to stare at it and stare at it and stare at it with an eye coverage. The law is crystal clear you can't do that. It has to be broadly construed, and the insurance company and the courts have to look at any other true facts known to the insurance company. And here is monstrous amount of true facts. It's not a question that the complaint, the claim being made against an insurer was for an unstable bench, and that all the evidence shows it was an unstable bench, and the bench tipped over, and there's even experts on that. So they just want to ignore the actual facts of the case and stick with their original denial, which the law does not allow. Are you saying then that there was no dispute about the condition of the bench by any of the parties? It's an undisputed. There's no dispute that the bench tipped over. They were contrary. They had an expert that said, you know, I don't think it was that unstable. You know, I didn't, you know, I didn't push harder. I had to be, you know, more forceful for it to go. So there was a dispute on that issue. But just, you know, the insurers and the claimants aren't required to try their underlying case in a situation like this. As you know, the second part of it is on the guillotine settlement. All those cases are settlements. And all that matters is, did the insurer have a reasonable anticipation of liability? And they're still in the case. They are out of the case. There is dueling experts on the case. There's massive amount of exposures cases worth 50, 100, who knows how much money these cases were. And so they had reasonable anticipation of liability. And they settled for that reason, for a reasonable amount of money. And in all those cases, there was no finding of a particular, you know, whether the insurer was liable at all or what basis the insurer was liable or how many bases the insurer was liable. It's the insurer had reasonable anticipation of settlement. And once the insurance company takes a position that a claim is not covered, the law is crystal clear. We cite Gein and the eight other cases. It's every single time the court rules this way. The insurance company takes a position that a claim is not covered. The insurer can settle that case. And the only thing left to do is, was in fact the claim covered? Not was the original complaint as narrowly construed maybe enough to trigger? No, but were the facts of the case actually covered? And if so, did the insurer reasonably anticipate liability, not were they in fact liable for any particular therapy, but did they reasonably anticipate liability? And then was the settlement unreasonable or not? Well, here, there's no question that the settlement was reasonable. The only objection they claim to the settlement is, oh, well, at the settlement time, they would have taken $6 million. Well, yeah, every plaintiff would take real money now paid on the check by an insurance company versus hope for money in the future, years of litigation. So, yes, they would have settled for less if a check had been issued, but, in fact, that wasn't going to happen, so they settled for $25 million. And it's really a red herring here because the Maryland policy is under $1 million. We're not claiming they owe more than $1 million. We're not claiming they're in bad faith. They owe their policy limits to identify their insurer. Would you agree that Judge Pantel recognized that even if the bench was considered the exclusion of life, and that's, I think, her last paragraph of her order, even if the bench was unstable, it still was the both was an integral part of the claim. And that's why we disagree with her ruling. I mean, she did consider the bench. Oh, she considered all the arguments. I'm not saying she didn't hear them. So whether the amended complaint was filed or not really doesn't matter because she considered it and rejected the thought. Right. All the facts. She just didn't care. She went with the arguments about their cases and not my or our cases. We cited four cases which had, you know, the USFG, the plaintiff fell out of the vehicle. The vehicle exclusion didn't preclude coverage. West Vernon, Mount Vernon, the child was left in a vehicle and was burned to death, fried to death, not excluded, covered by both the vehicle policy and the general liability policy. West American, the grandfather left his grandson in a car and rolled into a lake and he drowned. Still not excluded by a vehicle exclusion. The cases they cited are all distinguishable. Northbrook is the big one. That's the only Supreme Court case on this issue. That's a bus accident case. They're driving the bus on a train track and get hit by a train. Obviously that kind of claim is excluded by a vehicle exclusion policy. Same for State Farm v. Perez. Another car accident case. There's a car accident. Two cars crash into each other and the seat broke. And so they try to use that to get around the vehicle exclusion. But it's still a car accident claim. Same for Maxim v. Gillette. There's a prey being driven down the street. It's moving. And it falls off the prey float. Another vehicle accident. And the last case they all said was the Mahoney. There's a faulty welded brake pedal on the vehicle, which has an accident. And the clerk goes, well, the brake pedal only matters if the vehicle is moving. And that's why there's this accident. So those cases really highlight why they don't, the exclusion does not apply to this situation. This boat is just a platform, just a location where this bench was situated. This bench could have fallen over anywhere. In fact, was used anywhere. The testimony is on the boat, it was used on the shore more than on the boat. So the exclusion for a water theft doesn't bar liability arising out of this tipping over bench. When the boat had nothing to do with the bench tipping over. It only had something to do with the aggravation of the injury. Mr. Morris, why don't you bring your argument to a conclusion. You deserve 10 minutes for rebuttal. And let's let Mr. Worker respond to your argument. Thank you. I think I've answered enough on this. Rest in peace. Very good. Thank you. You stand on your brief with respect to the other issue. Yeah. The other issue is that exclusion, which, you know, the courts already ruled on the joint venture exclusion in Carter v. BGK in 2008. It's the only case on the issue that says it absolutely does not bar coverage to the people who are otherwise insured. It only bars coverage to the joint venture. And there's just no reason why this court is going to reverse itself seven years later for no reason given whatsoever. Thank you. Mr. Worker. Thank you, Your Honors. Dan Worker on behalf of Maryland Casualty. Good morning. As the court is aware, this is an insurance coverage case. The original complaint filed in this case, Maryland Casualty took a look at the facts that were put in that complaint and denied coverage based on a number of different exclusions and coverage positions with regard to their denial and then promptly filed a declaratory judgment action, which is proper to preserve the issues in the State of Illinois. After Maryland Casualty filed that declaratory judgment action, there was a stay put in place. We filed it in November of 2010. A stay was put in place by the Admiralty Court preventing any further action on this tort litigation, the underlying case that we referred to in our case. In January of 2012, a stay was put in place, and Judge Pantley had a tremendous amount of patience after we filed our summary judgment motion on the issue of whether or not the policy excluded coverage for the acts alleged in the original complaint. During that time, a settlement conference was heard and the case was settled. A settlement agreement was put in place after a demand for $6 million was made collectively against a number of different insurers, and one of those insurers was our insurer, Doe Management. Doe Management is an accounting operation. We insured their accounting functions, and their basic operation was for payroll for pizza operations that were owned by various Rose entities. They did not operate or own the boat in question according to testimony in the Seventh Circuit case and argument that we attached to our brief, nor did Doe Management own the actual bench that the plaintiff was sitting on on this boat when he fell from the second story that created his injuries in this case. We believe that there are no true but unpleant facts that were presented to Judge Pantley with regard to opposition to our summary judgment and the summary judgment filed by counsel in the case. I believe that Judge Pantley's ruling was very thorough in this respect. First, she looked at the original complaint, and she looked at the allegations of that complaint and found that Northbrook, an Illinois Supreme Court decision, that looked at the motorcraft and watercraft exclusion, which is at issue in this case, was the controlling applicable law. In applying that law, she looked at the facts and circumstances that were pled in the only complaint that was on file that Maryland had taken its coverage position with regard to. And when she reviewed that complaint, she held that the negligent acts or omissions were inextricably bound to one another to the use of that boat. And she looked at the allegations and found that the bench was placed in an unsafe location on that yacht, that due to the lack of a railing on the yacht near an unprotected edge of where this unstable bench was placed, that it was a floating vessel on water. It was beyond the break wall, which means that the boat was being used for its intended purpose as a pleasure craft, and that this injury occurred as a result of those conditions on the boat. After she took a look at the underlying original filed complaint, she also went further than that. She took a look at counsel's argument with regard to this extrinsic evidence, these true or unpled facts. And in looking at that and the amended complaint that was proposed, the judge properly noted that the only real difference between the two complaints was this additional allegation that this bench was wobbly or unstable. She noted in her opinion that there was no allegation of any actual defect in the bench. And in fact, she looked at some of the evidence that was presented by counsel with regard to their experts to review to see if there was any defect that could be ascertained from that testimony. In reviewing the experts' testimony, she concluded, as did the experts, I believe, in the case, that normal use of the bench as a bench really presented no problem. It was when you exerted a certain amount of force to that bench with your torso that it caused the bench to move. Now, this is a normal reaction to an unsecured bench. The testimony from the underlying case, she looked at that as well, and there was testimony from the underlying case from the captain of the boat that this bench was routinely used on the boat as a seating area for passengers and that it was placed on the second upper level where the whaling was missing. And that's how they used this bench on the day that this accident took place. With those facts that she considered, and there are a lot of facts in the underlying litigation, there's numerous cases that are related to this case, one that was just tried recently in Cook County, against a boat manufacturer. There are a lot of disputed facts. And an insurance company doesn't need to consider disputed facts. What they need to consider when they're determining whether or not there's an obligation for defense or indemnity is to look at the operative pleading in the case and true but unpled facts. So they have to be unpled. In this case, there were a number of pled facts. They pled the location of the bench on the boat. They pled that there was no whaling on the boat. They pled that the bench was unstable near the edge of the location where Mr. Vandenberg fell. Those are all pled facts according to the complaint that we have to take as true when we're considering coverage. If this were a picnic, same circumstances, same people invited to the boat are invited to the picnic, and Doe is involved in it, and Mr. Vandenberg sits on the bench at the picnic, turns as alleged, catches sunglasses that are falling, and falls and injures himself, is it your contention that Maryland would have a duty to defend? It would be my determination at that point to take a look at the actual filed pleading, look at the facts that you set forth, and determine whether or not there was an obligation to defend that complaint and whether or not the injury stems from that. Yeah, same thing. If Mr. Vandenberg fell off a bench as pled, would there be a duty to defend that event at a picnic on land? Depending on whether or not it was pled that Doe Management owned a bench at a picnic. If those were facts that were actually pled in a complaint that Doe Management owned a bench at a picnic and somehow was injured as a result of this bench, yeah, there could possibly be a duty to defend that complaint, but that's not the case. So the distinction really is that the injury happened on a watercraft and not on the ground at a picnic. But that's not the only distinction. What's the other distinction? The other distinction is it's the use of the bench itself as a passenger seating on a boat routinely, and it was the use of this bench as a passenger seating on the boat. That's my point. Forget a boat. If the same factual allegations were contained in a complaint that said it happened in Grant Park at a picnic, the same thing happened. He didn't fall 30 feet and break his neck. He just fell and, you know, bruised his shoulder. Would there be a duty to defend in your judgment under this policy under that complaint? Again, you know, it's fact-driven. Leaving it solely to the facts of your ledge, I would say that there most likely would be a duty to defend that complaint. Right. Now we change that complaint, strike Grant Park, insert boat in Lake Michigan. You're saying because of those circumstances, as planned, the watercraft exclusion would apply. Right. Okay. Because the use of that bench on that boat under those conditions are so inextricably bound to one another to create this injury, there is no wholly independent tort separate and aside from the use of that boat that caused this injury is what we're saying. And I believe Judge Panley analyzed that thoroughly and got that correct. And there's other, you know, issues with regard to coverage, not just the watercraft exclusion. You know, that's the main exclusion that Judge Panley relied on. This is a de novo standard review at this point for this court. And there's a number of other reasons why this court shouldn't uphold Judge Panley's ruling in the case. You know, aside, we talked about the extrinsic facts, but I would like to talk about the settlement, you know, in this case. The original demand that was made shortly after the stay was put in place, which is part of the record, never mentions a causal factor of this badge or ownership of this badge. The demand that was made was the result of the use of this pleasure craft. In order to get Doe Management involved in this case, along with some other defendants that were included in this $25 million settlement, they had to allege that they were in a joint enterprise with the owners of the boat, because they knew that Doe Management obviously didn't own the boat. They admitted on the record that RQM owned the boat. They admitted in the Seventh Circuit case that RQM owned the bench. Judge Panley didn't even reach this issue on the joint venture. Right, but it's a de novo. She said she wasn't going there with it. Agreed. But it's a de novo standard of review, Your Honor, so this court can breach and affirm based on any reason contained within the record. And, you know, I'm suggesting to the court that on the settlement alone, if this court finds that, you know, the settlement breached by the insured in this case was unreasonable per se, then the analysis ends. There is no coverage, and they cannot collect for that settlement under our policy. And that's the directive of the Illinois Supreme Court in Guillen. And Guillen sets forth how you look at those settlements. Counsel in the brief, you know, focused solely on what a like injury would result in in a verdict. You know, that's not the standard for determining whether or not a settlement is reasonable in a particular case. But, you know, they spend a lot of time, you know, talking about their ability to enter into the settlement. And we're not contesting that an insured can't enter into a consent to settle under MIOTA. They can do that. But the courts really scrutinize those settlements. And the reason why the courts scrutinize the settlements, as Guillen set forth, was because there's a likelihood or a propensity for collusion in setting those settlements. And that's what happened here. You know, the original demand was $6 million. After they learned that the insurance companies weren't willing to contribute to settle that case at those levels of demands, they turned around and entered into a settlement agreement for $25 million. They know the problem, that the settlement is unreasonable under those circumstances, what a reasonably prudent uninsured defendant with assets would do under the circumstances. Now, what reasonably prudent uninsured defendant with assets would ever pay more than what the demand is to settle the case? What reasonably prudent uninsured defendant would ever settle a case where they have strong liability defenses? As we explained, DOE management is an accounting firm. You know, their only connection to this case is the allegations of this joint enterprise, this joint venture they had with the boat owners, you know, in advertising and promoting this boat, in this, you know, combined or commingled ownership issue. Those are strong defenses. And at the time the case was settled, they had an admiralty case that was limiting the value of the case to the amount of the boat under admiralty law. So there were a lot of defensible issues on liability aside from the damage component. So when you take the $6 million demand in conjunction with the liability defenses that they had, I'm suggesting to the court under the Guillen standard that a reasonably prudent insured would never have settled under those terms. Mr. Worker, why don't you bring your argument to a conclusion? Sure. The last issue is the joint venture issue. As I mentioned briefly, the only tie that DOE management has to this case is the allegations that they were involved in this joint venture with these other defendants in the case. Counsel relies on BGK. BGK is clearly distinguishable from this case. In BGK, the insured was only sued in an individual capacity. There, the carrier sought to introduce the joint venture agreement to rely on their exclusionary language as extrinsic evidence. The court, in determining only a duty to defend, rejected that contention and found that the carrier had a duty to defend. Quite different from this case, where the allegations in the complaint are clear that it was only a joint enterprise or a joint venture to trigger the liability aspect of the case. Clearly falls within those boundaries. It was a joint venture. Who were the joint venture-ers and what venture? Okay. The alleged joint venture-ers are Rose Pavin, Mr. Rose himself, Kwanstrom, who is an owner of the boat, a number of other companies that they owned as well, like Location Finders, and there's a few others that are mentioned in the complaint. But the reason why they need to name all these defendants, because there was limited coverage of 2 million on the boat. Right. So who were the other, and Doe was a joint venture-er with them in ownership of the boat or promoting these parties? Promoting the parties, I think, is how they were trained. The advertising of the boat for these parties, for having their employees, you know, assisted maybe in some of the events is what is alleged. So Doe is only being sued in their capacity as a joint venture. And the policy is really clear that no person or organization isn't insured under this policy while they're participating in an unnamed joint venture. And that's why that exclusion would apply. You know, I believe based on the amount of coverage issues in this case, any one of them could eliminate coverage. The watercraft exclusion, the joint venture exclusion, the settlement with, you know, an unreasonable amount, all are basis to affirm what Judge Pantley did. She gave this case great consideration, and I believe that her decision is well-reasoned and well-founded. Thank you. Thank you very much. Mr. Lewis. Maryland had all these great defenses to get Mr. Rose and Doe out. Maybe they should have defended the case and tried to get them out. But they had defense counsel try to get them out and weren't able to get them out. They faced serious personal exposure as Doe and as Rose and as all the other defendants. They even paid $300,000 of their own money. None of the other union cases have any suggestion that the insurers are actually paying their own money. They're so concerned with their potential exposure. Maryland admits that there's true facts in front of them that this bench tipped over. There's no suggestion, not a single witness ever said, no, the bench didn't tip over. Every person says that bench tipped over. Well, what about the notion that they may have paid $300,000 out of their own pocket, but they also committed themselves to $14 million in the event, recoverable only through insurance proceeds? That's what every insurer in the Guillen cases does. They settle for an amount of money that is determined by them and the plaintiff. It's never been a problem by the court as long as the amount is not unreasonable. And here, you never heard Maryland say that their $1 million is beyond the value of this case. I mean, the insurers paid 30% of that out of their own pocket. Clearly, their $1 million exposure is so far below the reasonable value of this case. It's just not even worth addressing. You're right that your question is saying that this is a nearsighted situation. It's just the fact that this bench was on a boat is why they wanted to deny it, because it's the nearsightedness of the location, if it depends on themselves. You saw hard at work, and I think you finally admitted that recovery. This is why the rules are so strong against insurance companies, that everything has to be constricted against them because they fight so hard to not pay claims. Well, that's on the basis of the rule. That's why there's a rule, because they're going to fight tooth and nail and not admit anything. What if a person had been shot on the boat, or something else had happened? Well, no, sorry, it happened on a boat, it's not covered. Well, it's not just because it happened to happen on a boat. You have to look at, is there a basis for the insurer's liability? That's not dependent on the use of the boat, and that's clearly this bench. It has nothing to do with this being a boat, nothing to do with the boat moving, which is what all the cases that go their way involve, a vehicle accident. No one said, oh, there was a boat accident out on Lake Michigan. No. Somebody fell off a bench and broke his neck. It's not a motor vehicle accident. It's not a watercraft accident. It's just the place where an accident happened, and that's why their exclusion doesn't apply. Any further questions? Anything further? Thank you very much. Thank you very much. All right. I would like to compliment the attorneys on their briefs and on their arguments. This matter is going to be taken under advisement, and this court stands in recess.